561 So.2d 427 (1990)
Guion M. LINDSAY and David Smythe Lindsay, As Co-Personal Representatives of the Estate of Jean M. Lindsay, Deceased, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 88-2416.
District Court of Appeal of Florida, Third District.
May 15, 1990.
Mershon, Sawyer, Johnston, Dunwody & Cole and Carolyn A. Pickard and Mark A. Lavine, for appellant.
Hoppe, Backmeyer & Nelson and Thomas E. Backmeyer, for appellee.
Before HUBBART, FERGUSON and COPE, JJ.
FERGUSON, Judge.
The main issue, as framed by the appellant, is whether the increased amount paid to the United States government for estate taxes as a result of a decedent's premature death is a recoverable element of damages under the Florida Wrongful Death Act. We affirm the trial court's partial summary judgment for the insurer, agreeing that the loss of prospective federal estate tax credits as a consequence of an insured's premature death is not an element of damages under the Act.
Guion M. Lindsay and David Smythe Lindsay, appellants, are the duly appointed co-personal representatives of the Estate of Jean M. Lindsay. On September 15, 1985, Jean M. Lindsay was killed when struck by an automobile negligently operated by Paul Bough. State Farm Insurance Company tendered, and the Estate accepted, the $10,000 limits of Bough's automobile insurance policy. Lindsay's estate sought excess coverage under the deceased's $100,000 underinsured motorist coverage with the appellee, Allstate Insurance Company.
*428 Mrs. Lindsay was eighty-years-old at the time of her death in 1985. Appellants describe her death as "premature" in that, but for the fatal accident, she presumably would have lived another 10.61 years according to the Life Expectancy Table, 27 Florida Statutes Annotated 91 (West Supp. 1988). The unified credit against her estate tax, in the year of her demise, was $121,800. 26 U.S.C. § 2010 (West Supp. 1988). If she had lived another two years, her estate would have been entitled to the maximum $192,800 in estate tax credits. The estate representatives contend here that the $71,000 in lost tax credits is an element of damages under the Wrongful Death Act, section 768.21(6)(a), Florida Statutes (1985).
There is no Florida law on the question. Appellants rely mainly on New York authority, Farrar v. Brooklyn Union Gas Co., 131 Misc.2d 936, 502 N.Y.S.2d 610 (Sup.Ct. 1986), aff'd, 134 A.D.2d 31, 523 N.Y.S.2d 839 (App.Div. 1987), and Pratt v. George Spalty Sons, Inc., 135 Misc.2d 588, 516 N.Y.S.2d 433 (Sup.Ct. 1987), in support of their contention that the trial court erroneously entered a summary judgment for Allstate on the tax credit issue.[1] Allstate makes a convincing argument that the New York cases are distinguishable for the reason that they are based on a New York legislative enactment that is different from Florida's Wrongful Death Act. Under New York law, E.P.T.L. section 5-4.3, the amount of recovery for damages, in a wrongful death action, "is measured by the fair and just compensation for the pecuniary injuries resulting from decedent's death to the persons [the distributees] for whose benefit the action is brought." Farrar, 502 N.Y.S.2d at 611.
Section 768.21(6)(a) of the Florida Wrongful Death Act, by comparison, appears to measure the loss to the decedent's estate as a consequence of an early death, without consideration for the consequences of federal estate taxes upon what would otherwise have been available for distribution. The interpretation flows from the statutory term "net accumulations" as plainly defined in section 768.18(5):
[T]he part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of his estate if he had lived his normal life expectancy.
[Emphasis added.]
There is no language in the statute which suggests that the legislature intended the impact on the estate caused by federal tax laws, to be a factor in the computation of net accumulations under the Wrongful Death Act. Further, we are not permitted to tack additional words onto a statute for the purpose of aiding a liberal construction. See Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 4th DCA 1976).
Appellants' remaining two points present no grounds for reversal of the judgment. First, no abuse of discretion is shown by the trial court in excluding testimony of an expert as to how the statute should be interpreted. It is improper for a trial court to rely on expert testimony to determine the meaning of terms in a legislative enactment. Devin.
Second, we agree with the trial court's ruling that the decedent's home, occupied by her during her lifetime, was not held for investment purposes entitling the personal representative to treat the real estate taxes on the residence as an investment expense rather than a personal expense. Treatment of taxes on the residence as an investment expense rather than as an estate-reducing personal expense, would have the effect of increasing the net accumulations  and the amount of damages. Ordinarily, any expense of maintaining a person's life-style, e.g., food, clothing, entertainment, and shelter, including *429 expenses incidental to the shelter, would be personal in nature.
Affirmed.
NOTES
[1] Our own research discloses that Farrar was reversed. See Farrar v. Brooklyn Union Gas 73 N.Y.2d 802, 537 N.Y.S.2d 26, 533 N.E.2d 1055 (1988). The Court of Appeals of New York held, in answer to a certified question, that federal estate tax credits that the decedent would have received had he lived longer, could not be recovered in a wrongful death action absent express legislative authority. We found no subsequent history on Pratt v. George Spalty Sons, Inc., but the high court ruling in Farrar appears to have overruled Pratt as well.