Shirley B. HIATT as Personal Representative of the Estate of Dale C. Hiatt, deceased, Plaintiff–Appellee, Cross–Appellant,

v.

UNITED STATES of America, Defendant–Third–Party Plaintiff–Appellant, Cross–Appellee,

George P. Tsiotis, Third–Party Defendant–Appellee.

George P. TSIOTIS, Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

No. 89–5826.

United States Court of Appeals, Eleventh Circuit.

Sept. 4, 1990.

---

Barbara B. O'Malley, U.S. Dept. of Justice, Torts Branch Civil Div., Washington, D.C., for defendant-third-party plaintiff-appellant, cross-appellee.

Edward R. Curtis, Ft. Lauderdale, Fla., for Tsiotis, Anderson.

Susan L. Dolin, Conrad, Scherer & James, Ft. Lauderdale, Fla., for Hiatt.

Before FAY and JOHNSON, Circuit Judges, and GIBSON *, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge:

This is a wrongful death case against the United States brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. (1988), in which the United States was found by the district court to be 25% at fault for the death of the plaintiff's husband in an airplane crash. The plaintiff appeals from the district court's award of damages. The United States, as third-party plaintiff, appeals the district court's refusal to award it contribution from a third-party defendant.

We affirm the damage awards with an adjustment, reverse the district court's re-fusal to award damages to the decedent's minor son; and, we reverse the holding that the United States is not entitled to contribution from the third-party defendant and remand that issue for further consideration.

## I. FACTS

On February 3, 1981, Dale C. Hiatt, then 56 years old, was a passenger in a Cessna 421 aircraft over Fort Lauderdale, Florida. The plane collided in midair with a Cessna 172 aircraft; all occupants of both planes were killed. Dale's widow, Shirley Hiatt, filed an administrative claim with the Federal Aviation Administration ("FAA"), alleging that her husband's death was caused by the negligence of FAA air traffic controllers. After that claim was denied, she brought this wrongful death suit against the United States under the FTCA. The United States filed a third-party complaint seeking indemnity or contribution from Wendy Anderson (the personal representative of the estate of William Wille, the pilot of the Cessna 421) and George P. Tsiotis, the owner of the Cessna 421.[1]

After a bench trial, the district court determined that the pilot, William Wille, was 75% at fault for the collision, and the FAA air traffic controllers were 25% at fault. The district court awarded Shirley Hiatt $100,000 for her noneconomic losses, such as loss of protection and companionship, and $361,325 for loss of support. The court also awarded to Mrs. Hiatt, as representative of her husband's estate, a total of $419,456 for diminution in the stock value of Hiatt Trucking Company, the company which Dale started in 1955 and of which he was president and majority stockholder when he died. The district court refused to award anything to the decedent's minor son, John, finding that it had no jurisdiction to do so because John failed to file an administrative claim as required by the FTCA. The district court also refused

---

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. In the meantime, Anderson and Tsiotis also filed suit against the United States. That action was consolidated with Hiatt's action against the United States and tried at the same time. The judgments rendered in that action are not at issue in this appeal.

Hiatt's request that it award recovery for the estate's premature payment of estate taxes.

Regarding the United States' third-party complaint, the district court granted the United States contribution from Wendy Anderson (representative of the deceased pilot) in the amount of 75% of the award rendered in favor of Hiatt against the United States, that amount representing the extent to which the court had found the pilot was at fault. The district court, however, reduced that amount by $100,000; it stated that that amount represented the sum that had already been paid to Shirley Hiatt by Anderson and Tsiotis pursuant to a release in the consolidated action.[2]

The district court did not award the United States any damages against third-party defendant Tsiotis, the owner of the plane. The court held that while the United States argued that Tsiotis was vicariously liable for the pilot's negligence under Florida's dangerous instrumentality doctrine, the United States failed to brief the applicability of that doctrine or present any evidence relevant thereto.[3]

Shirley Hiatt now appeals, arguing that each of the damage awards is inadequate and that an award should have been made to her minor son, John. She further argues on appeal that the district court erred in failing to award damages to the estate for its premature payment of estate taxes. The United States, as third-party plaintiff, also appeals, arguing that the district court erred in finding that Tsiotis owed it nothing in contribution and in deducting the $100,000 settlement from the contribution

award in favor of the United States instead of from the wrongful death award in favor of Mrs. Hiatt.

We affirm the district court's damages award to Shirley Hiatt, including its holding that damages are not recoverable for the premature payment of estate taxes. However, we reverse the district court's ruling that the amount which Anderson owes the United States in contribution should reflect a setoff of $100,000. That $100,000 should be deducted from the amount owed to Mrs. Hiatt. We further reverse the district court's decision that no damages were awardable to John Hiatt, the decedent's minor son. Finally, we reverse the district court's holding that Tsiotis is not liable to the United States for contribution and remand that issue for further consideration. Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

## II. ANALYSIS

### A. FTCA Claim of John Hiatt

■ At the beginning of trial, Hiatt stipulated that her son, John, suffered no loss of support as a result of his father's death. However, she did present evidence of non-economic damages sustained by him. *See* Record, Vol. 17 at 14–27; Vol. 19 at 425–26. The court ruled that it could not award damages for John's loss because he failed to file an administrative claim with the FAA as required by 28 U.S.C. § 2675(a)[4].

Hiatt argues that the district court erred in refusing to award damages for John's

---

2. Both parties agree that this was error. *See* Reply Brief for the Appellant at 10. In the course of trial, Mrs. Hiatt entered into a settlement agreement with Tsiotis, Anderson, and other parties not now involved in this litigation, in which Mrs. Hiatt received $100,000 and in return executed a release from further liability for her husband's death. *See* Supplemental Record, Vol. 3, Doc. 159. The parties agree that pursuant to Florida law this settlement should have been set off from the award to Mrs. Hiatt owed by the United States rather than from the amount that Anderson owed the United States in contribution. *See* Fla.Stat. § 768.041(2) (1986).

3. The dangerous instrumentality doctrine as applied in Florida provides generally that the owner of a dangerous instrumentality is liable for injuries resulting from its misuse when the injuries occur while the instrumentality is being operated with the owner's consent. *See Orefice v. Albert,* 237 So.2d 142, 144 (Fla.1970).

4. That section provides in relevant part: "An action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a) (1988).

noneconomic loss, claiming that because John was the decedent's minor son and therefore a beneficiary of the decedent's estate, his claim was encompassed in the administrative claim submitted by her. Hiatt also emphasizes that under the Florida Wrongful Death Act a wrongful death action can be brought only by the decedent's personal representative, who in this case was herself. On the other hand, the government argues that the FTCA's exhaustion requirement is a jurisdictional rule, and, accordingly, because John failed to file an administrative claim the district court lacked jurisdiction to consider his claim.

We encountered a similar situation in *Davis v. Marsh,* 807 F.2d 908 (11th Cir. 1987) (per curiam). There, the decedent's sister filed an administrative claim on behalf of two of the decedent's five children, seeking $100,000 for wrongful death. After that claim was denied, the decedent's sister and husband instituted an FTCA suit on behalf of the husband and all five children seeking in excess of $1,000,000 for the decedent's wrongful death. Following trial, the district court awarded $50,000 to each of the five children. On appeal, this court held that the district court properly considered the claims of all five children even though only two were named in the administrative claim, noting that the claims of the other two had been "inadvertently omitted." *Id.* at 912. However, the court ruled that the district court lacked jurisdiction to award damages of more than $100,-000 because that was the amount sought in the administrative claim. *Id.*[5]

In this case, we do not face the problem of a plaintiff seeking more money in the FTCA suit than she had sought in the administrative claim. Shirley Hiatt sought $10,000,000 in her claim with the FAA and she has requested that amount in the instant suit. However, here, as in *Davis,* we are confronted with the situation where damages are sought on behalf of one of the decedent's children whose name was omitted from the administrative claim. As Mrs.

Hiatt argues, *Davis* clearly is authority for allowing the district court to entertain the omitted child's claim, and thus we hold that John Hiatt's claim should have been considered in this case.

The government argues that the exception recognized in *Davis* applies only to the omitted claims of minor children and that John Hiatt does not qualify because he was nineteen at the time of his father's death. The government claims that under Florida law the age of majority is eighteen. We recognize that under Fla.Stat. § 743.07(1), eighteen is recognized as the age of majority. However, under the Florida Wrongful Death Act "minor children" are defined as "children under 25 years of age, notwithstanding the age of majority." Fla.Stat. § 768.18(2) (1986). We consider this more specific statute to be applicable in this case. Thus, for purposes of this wrongful death suit John Hiatt is considered to be a minor.

We do not believe that allowing recovery for John's damages is unfair to the government. In Shirley Hiatt's administrative claim it was clear that Shirley was acting as the personal representative of Dale Hiatt's estate, and thus the government had notice that damages would be sought for all beneficiaries of the estate. Indeed, the government has not argued that it was surprised by Hiatt's pursuit at trial of damages on John's behalf. *See Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1441–44 (5th Cir.1990) (estate executor's failure to name decedent's spouse and daughter in administrative claim did not defeat their claims in FTCA suit), *amended on reh'g on other grounds,* 905 F.2d 61 (5th Cir.1990); *Schuler v. United States,* 675 F.Supp. 1088, 1093–94 (W.D.Mich.1987) (allowing recovery in FTCA suit for decedents' children even though children were not named in administrative claims, noting that the government had sufficient notice that the claims sought damages for all beneficiaries of the estates), *rev'd on other grounds,* 868 F.2d 195 (6th Cir.1989).

---

5. Under the FTCA, the district court is without jurisdiction to award damages in excess of the amount sought in the administrative claim ab-

sent special factors not present in this case. *See* 28 U.S.C. § 2675(b) (1988).

The government argues that allowing damages for the minor son is contrary to *Jackson v. United States*, 730 F.2d 808 (D.C.Cir.1984). Its reliance on that case, however, is misplaced. In *Jackson*, the decedent's parents filed an administrative claim alleging wrongful death and seeking $100,000 in damages. After that claim was denied, the decedent's widow filed a wrongful death and survival claim. The district court dismissed the widow's suit, reasoning that the parents' administrative claim for wrongful death could not be used by the widow to satisfy the requirement that she file an administrative claim. *Id.* at 809. The D.C. Circuit affirmed that ruling, noting, among other things, that the widow's survivorship claims raised in the FTCA suit were "different in nature from the wrongful death claim asserted administratively." *Id.* at 810 (citation omitted). That is not the case here. The administrative claim and the FTCA suit involved here assert virtually the same claim; both sought damages for Hiatt's wrongful death. The result we reach here is not contrary to the D.C. Circuit's holding in *Jackson.*

Accordingly, we hold that the district court erred in refusing to award damages for the noneconomic loss sustained by John Hiatt as a result of his father's wrongful death. We therefore remand this case to the district court and direct that court to consider the evidence presented at trial with respect to the damage sustained by John and to enter judgment accordingly.

In its opinion the district court stated in dictum that even if it were to entertain John Hiatt's claim the damages awarded would be negligible because the evidence indicated that John was not close to his father. *Hiatt v. United States*, No. 82–6446, slip op. at 16–17 (S.D.Fla. July 28, 1988). The parties have briefed this issue; the government, of course, argues that any damages awarded to John should be negligible, and Hiatt argues that the district court's finding that John's damages were negligible was clearly erroneous. Because the district court's comment in this regard was dictum and did not constitute a clear holding, we refrain from ruling on it or commenting upon it in this appeal. We

make no finding on the amount of damages that should be awarded for John's noneconomic loss. On remand, the district court should carefully consider the evidence of John's noneconomic damages and enter a fair and reasonable award.

### B. Adequacy of Damages Awards

Hiatt claims that the district court's awards of $100,000 for her noneconomic loss, $361,325 for loss of support, and $419,456 for diminution in the value of stock in Hiatt Trucking Company are inadequate as a matter of law. In reviewing damage awards, we afford considerable deference to the district court; we will reverse the award only if we find it to be clearly erroneous. *See Meader v. United States*, 881 F.2d 1056, 1060 (11th Cir.1989); *Davis*, 807 F.2d at 913. This means that we should not reverse a district court's damages award simply because we may conclude that we would have computed damages differently in the first instance. *Meader*, 881 F.2d at 1060. Rather, we may reverse only if after reviewing all the evidence we are " 'left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

We first address Hiatt's complaint that the $100,000 award for her noneconomic damages is inadequate. Damages of this sort are compensable under section 768.21(2) of the Florida Wrongful Death Act, which provides: "The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury." Fla.Stat. § 768.21(2) (1986).

At trial, Mrs. Hiatt argued that she deserved $500,000, but the district court found that amount to be excessive. The court stated that it took into account that the Hiatts were married for 34 years, but also recognized evidence that Dale Hiatt had been unfaithful and that at one point the couple was separated for a period of six

months. The district court also took into account that Mrs. Hiatt stated that she contemplated divorce throughout all of her married life.

■ After reviewing the evidence, we are satisfied that the district court's award to Mrs. Hiatt was not clearly erroneous. Florida law recognizes that evidence of marital discord is probative of the extent of survivor's noneconomic loss as a result of the wrongful death. *See Adkins v. Seaboard Coast Line R.R. Co.*, 351 So.2d 1088, 1092 (Fla.Dist.Ct.App.1977). The record indicates that the Hiatts' marriage, while never formally terminated, was far from ideal. Mrs. Hiatt testified that she suspected her husband of infidelity on several occasions, Record, Vol. 19 at 456–459, and that the couple informally separated for a period of time. *Id.* at 460. Mrs. Hiatt admitted, in short, that her marriage had "troubles." *Id.* at 463. *See also* Record, Vol. 18 at 201–03 (testimony of Eugene Gamelin). The district court did not clearly err in awarding Mrs. Hiatt $100,000 for her noneconomic loss.

■ The same is true for the district court's award for Mrs. Hiatt's loss of support in the amount of $361,325. This award was made pursuant to section 768.-21(1) of the Florida Wrongful Death Act, which provides that "[e]ach survivor may recover the value of lost support and services from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value." Fla. Stat. § 768.21(1) (1986). The court based the amount of this award on findings that Dale Hiatt's base earning capacity, computed by averaging his incomes from the three years prior to his death, was approximately $74,770; that his earning capacity would have continued until he reached age 65; that his earning capacity would have grown at a rate of 12½% per year; and that his rate of personal consumption would have been 50%.

Hiatt argues that the district court's findings that Dale would have worked only until age 65 and that his personal consumption rate was 50% were clearly erroneous.

We are not persuaded. The district court based its finding that Hiatt would have worked only until age 65 on evidence of his increasing interest in recreational activities and on an expert economist's testimony based on work-life expectancy tables. The district court also heard evidence that Mr. Hiatt enjoyed a somewhat luxurious lifestyle such that it would be reasonable to expect his personal consumption rate to be well above average. We find sufficient support in the record for all of these findings. The record contains evidence that Mr. Hiatt enjoyed many comforts in his free time and that he probably would have become more involved in recreational interests and less involved in work activities as he reached retirement age. *See* Record, Vol. 20 at 578–580 (regarding work-life expectancy tables); Vol. 18 at 197–200, Vol. 19 at 421–23, 447–52, and Vol. 20 at 653–54 (regarding Hiatt's lifestyle and rate of personal consumption).

■ Finally, we turn to the district court's award of damages for diminution in value of stock in Hiatt Trucking Company from 1981 to 1985, and its refusal to award damages for future diminution of stock value. As to future loss, the district court found that within several years after Hiatt's death, Hiatt Trucking returned to a stable and profitable state. Thus, the court reasoned, Hiatt failed to prove damages for future loss. For the decline in the company's stock from 1981 to 1985, the district court awarded the estate $419,456. This award was authorized by section 768.-21(6)(a) of the Florida Wrongful Death Act, which provides that the estate's personal representative may recover "the loss of prospective net estate accumulations." Fla.Stat. § 768.21(6)(a) (1986).

Hiatt vigorously challenges the factual findings upon which the district court based this award. While the district court found that Dale Hiatt's death caused a 5% decline in the growth rate of Hiatt Trucking Company stock, Hiatt argues that due to her husband's death the company experienced a 20% decline in stock value. Hiatt relies heavily on the fact that in 1980, the year prior to Dale Hiatt's death, the compa-

ny's shareholder's equity grew in excess of 20 percent. She argues that but for her husband's death the company would have continued to profit at that rate. The district court was not convinced; it concluded that 1980 was an aberrational year for Hiatt Trucking, and that the profit figures for that year could not be used as a basis for predicting how the company would have fared if Dale Hiatt had not been killed. *Hiatt*, No. 82–6446, slip op. at 27–28.

The district court acknowledged that the company's profitability declined after Dale Hiatt's death. However, it concluded that Dale's death was only one of many contributing factors. Other factors found to be operative were economic conditions in the construction industry, the company's problems with unionization, and the company's loss of several key employees. *Hiatt*, No. 82–6446, slip op. at 28–32. Hiatt argues that these other factors cited by the district court were either inconsequential or were themselves caused by Dale's death.

Hiatt particularly emphasizes that a factor that contributed significantly to the company's decline was the departure of Eugene Gamelin, the company's general manager who also served as president for the two years after Dale's death. Gamelin left Hiatt Trucking in 1983 and started his own business, which competed with Hiatt Trucking. Shirley Hiatt argues that Gamelin's departure hurt Hiatt Trucking and that Gamelin would not have left if Dale had not been killed. The district court did not find evidence on that point to be credible. Rather, the court concluded that the Hiatt family had always expected that Gamelin would leave the company and start his own business and that Dale Hiatt's death in 1981 simply made Gamelin's departure soon thereafter a certainty. *Id.* at 31–32.

After reviewing the record, we are satisfied that the district court's findings on diminution were not clearly erroneous. We recognize, as Hiatt points out, that there is also evidence in this record that supports her theory that her husband's death was the sole cause of the company's decline and that Gamelin would not have left if Dale Hiatt had not died. But that evidence is not so pervasive that we are " 'left with the definite and firm conviction that a mistake has been committed' " by the district court. *Meader*, 881 F.2d at 1060 (quoting *Gypsum*, 333 U.S. at 395, 68 S.Ct. at 542). It cannot be gainsaid that it is not the role of an appellate court to reweigh the evidence and make factual findings after the district court has done so. Our function at this point is to review the record and the findings to determine whether the district court's conclusions are clearly erroneous. We find that they are not in this instance, and thus we affirm the district court's award to Hiatt of $419,456 for diminution in the value of Hiatt Trucking Company's stock from 1981 through 1985, and its finding that the estate sustained no loss in future stock value.

### C. Recoverability of Prematurely Paid Estate Taxes

■ Hiatt next argues that as the estate's personal representative she should have been allowed to recover the $890,117 in federal and state estate taxes paid by the estate at her husband's death, or, alternatively, an amount representing the estate's loss of the use of that money. Further, she contends that she should have been awarded the lost appreciation on the parcel of real estate that was sold by the estate in order to pay the estate tax. She argues that if Dale had lived out his expected lifespan, his estate would have owed no estate taxes at the time of his death because of changes enacted in the tax laws since then. According to Hiatt, the premature payment of estate tax constitutes "the loss of prospective net accumulations," which is recoverable by the estate under the Florida Wrongful Death Act. The Act defines "net accumulations" as:

the part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of his estate if he had lived his normal life expectancy. "Net business or salary income" is the part of the decedent's probable gross income after taxes,

excluding income from investments continuing beyond death, that remains after deducting the decedent's personal expenses and support of survivors, excluding contributions in kind.

Fla.Stat. § 768.18(5) (1986).

The district court rejected this claim, stating that "payment of estate taxes is simply not a recognized item of damages in the Florida Wrongful Death Act." *Hiatt,* No. 82–6446, slip op. at 22. The district court went on to state that even if estate taxes were recoverable under the Act they would still be denied in this case because the evidence was too speculative to permit an award. The court specifically noted that "it is impossible to foresee what estate tax liability may be imposed under whatever tax laws may be in effect in the year 2000, the year that [Dale Hiatt] would have died but for the tortious conduct of defendant." *Id.* The district court then stated that while Hiatt's claim for the loss of the use of the money paid in estate taxes was "more compelling than the claim for return of the $890,000 paid ... the same considerations that mandate denial of recovery of the taxes paid also mandate denial of recovery for the loss of use of the funds." *Id.* at 23.

Since the district court's decision in this case the Third District Court of Appeal of Florida has had occasion to address this very issue in *Lindsay v. Allstate Ins. Co.,* 561 So.2d 427 (Fla.Dist.Ct.App.1990). In that case, the personal representatives of a decedent's estate contended that lost tax credits was an element of damage under the Florida Wrongful Death Act. At the time of the decedent's death, the estate received a unified credit against her estate tax of $121,800. If she had lived another two years her estate would have been entitled to the maximum $192,800 in tax credits. The court rejected the personal representatives' argument that the $71,000 in lost tax credit was compensable as lost net accumulations, stating:

> the Florida Wrongful Death Act ... measure[s] the loss to the decedent's *estate* as a consequence of an early death, without consideration for the consequences of

federal estate taxes upon what would otherwise have been available for distribution. The interpretation flows from the statutory term "net accumulations" as plainly defined in section 768.18(5).... There is no language in the statute which suggests that the legislature intended the impact on the estate caused by federal tax laws, to be a factor in the computation of net accumulations under the Wrongful Death Act. Further, we are not permitted to tack additional words onto a statute for the purpose of aiding a liberal construction.

*Lindsay,* 561 So.2d at 428 (citation omitted).

We think that *Lindsay* clearly controls on this issue and requires affirmance of the district court's holding that the premature payment of estate taxes is not compensable. We also note that at least two other jurisdictions have reached this issue and have held that estate taxes are not recoverable by an estate. *See Farrar v. Brooklyn Union Gas Co.,* 73 N.Y.2d 802, 533 N.E.2d 1055, 537 N.Y.S.2d 26 (1988); *Elliott v. Willis,* 92 Ill.2d 530, 541–42, 65 Ill.Dec. 852, 858, 442 N.E.2d 163, 169 (1982).

We have considered and reject Hiatt's argument that the court in *Lindsay* failed to follow controlling precedent from the Florida Supreme Court in *Delta Air Lines, Inc. v. Ageloff,* 552 So.2d 1089 (Fla.1989), and *Wilcox v. Leverock,* 548 So.2d 1116 (Fla.1989). The court in *Ageloff* held that "net accumulations" includes income from investments that the decedent would have made with his anticipated savings if he would have lived his normal life expectancy. 552 So.2d at 1092. In *Wilcox,* on the other hand, the court held that "net accumulations" did not include income received from trusts that would continue to accrue beyond the decedent's death. 548 So.2d at 1118. The distinction is that in *Wilcox* the investment would keep generating income regardless of the decedent's efforts; thus, the wrongful death caused no loss to the estate with respect to that investment. For our purposes here, neither case is precisely "on point"—that is, neither addresses whether an estate can recover money paid in estate taxes or the loss of the

opportunity to invest that money. Nor do we find that the underlying rationale of *Ageloff* or *Wilcox* is undermined by the result reached in *Lindsay.* Nothing in *Lindsay,* or in our holding here, detracts from the principle espoused in *Ageloff* or *Wilcox* that an estate may recover the loss of income that would have been generated and saved from investments that the decedent would have made had he lived his expected normal lifespan.

We are also unpersuaded by Hiatt's argument that this court may disregard the *Lindsay* decision because it was not rendered by Florida's highest court. Of course, in determining the content of state law the federal courts should rely upon the decision of the state's highest court. But where, as here, the state's highest court has not addressed an issue, "intermediate state appellate court decisions ... must be taken to reflect a valid interpretation of state law." *Bradbury v. Wainwright,* 718 F.2d 1538, 1540 (11th Cir.1983) (citations omitted). We must apply the decisions of the state's intermediate appellate courts "absent some persuasive indication that the state's highest court would decide the issue otherwise ... whether or not [we] agree[ ] with the reasoning on which the state court's decision is based or the outcome which the decision dictates." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690 (11th Cir.1983) (citations omitted).

Accordingly, applying *Lindsay,* we hold that the district court did not err in holding that the personal representative of Hiatt's estate is not entitled to recover estate taxes paid, the loss of the use of that money, or the loss of appreciation on the land sold to pay the taxes, as part of lost net accumulations under section 768.21(6)(a) of the Florida Wrongful Death Act.

### D.  Third–Party  Complaint  Against Tsiotis

■ After Shirley Hiatt filed this suit against the United States, the United States filed a third-party complaint against Anderson and Tsiotis in January 1983, seeking indemnity or contribution in the event that it was found liable to Hiatt. Tsiotis filed a Motion to Dismiss the complaint against him, arguing under Fed.R. Civ.P. 12(b)(6) that it failed to state a claim upon which relief could be granted. That motion remained pending until after trial. Tsiotis never filed a responsive pleading to the third-party complaint. After trial, some six years after the filing of the third-party complaint, the district court entered an order denying Tsiotis' Motion to Dismiss. On the merits, the district court held that the United States was not entitled to contribution from Tsiotis because it failed to present any evidence of Tsiotis' negligent maintenance of the aircraft, failed to brief the applicability of the dangerous instrumentality doctrine, and failed to present any evidence showing the applicability of that doctrine.

Tsiotis admits that the district court's rationale for denying the government's contribution claim against him was to some extent in error; he admits that the United States briefed the applicability of the dangerous instrumentality doctrine before the district court. Brief of Appellee George P. Tsiotis at 5. Tsiotis argues that the district court was nonetheless correct in dismissing the United States' third-party complaint against him because: (1) the United States failed to plead the elements of the dangerous instrumentality doctrine in its third-party complaint, and (2) the release executed by Shirley Hiatt bars the United States' contribution claim against him. Alternatively, Tsiotis argues that this court should remand and direct the district court to allow him to file a responsive pleading on the United States' contribution claim in which he will raise his release defense.

The United States argues that it did plead and prove the elements of the dangerous instrumentality doctrine, and also that Tsiotis is liable for the pilot Wille's negligence under basic principles of agency law. Moreover, the United States argues that Tsiotis is precluded from asserting the release as a defense because he failed to raise it in a responsive pleading, in his Motion to Dismiss, or in any other document before the district court. The United States claims that it would be prejudiced

if Tsiotis were now allowed to raise the release defense on remand.

We hold that the district court erred in ruling that the United States failed to allege or brief the applicability of the dangerous instrumentality doctrine. As even Tsiotis admits, the United States did make its dangerous instrumentality argument to the district court in its Reply to Tsiotis' Motion to Dismiss, *see* Record, Vol. 1 at Doc. 32, and in its post-trial filings. *See* Record, Vol. 7 at Docs. 203 & 204. We also believe that the United States, while it failed to invoke the dangerous instrumentality doctrine by name in its third-party complaint, did provide adequate notice in that complaint of its intent to hold Tsiotis vicariously liable for Wille's negligence. *See* Record, Vol. 1 at Doc. 25, p. 4.

Further, the district court had before it evidence that the elements of the dangerous instrumentality doctrine are satisfied here. As explained earlier, the doctrine imputes an operator's negligence to the owner where the thing operated is a dangerous instrumentality and the operator used it with the owner's consent. The doctrine was first recognized in Florida in *Anderson v. Southern Cotton Oil Co.*, 73 Fla. 432, 74 So. 975 (Fla.1917), and was later applied to owners of aircrafts in *Orefice v. Albert*, 237 So.2d 142 (Fla.1970). In this case it is undisputed that Tsiotis was the owner of the Cessna 421 and that the pilot, Wille, was operating it with Tsiotis' permission.

■ Thus, we reverse the district court and hold that the United States has stated a cause of action against Tsiotis based on Florida's dangerous instrumentality doctrine. However, we agree with Tsiotis that he should have the opportunity to raise his defense that the release given to him by Shirley Hiatt operates to bar the United States' contribution claim against him. We reject the United States' argument that Tsiotis waived the release defense by failing to raise it in a responsive pleading. *See Chilivis v. Securities and Exchange Comm'n*, 673 F.2d 1205, 1209 (11th Cir. 1982) (stating that failure to raise affirmative defense in motion to dismiss and motion for summary judgment did not result in waiver because neither of those motions constitute responsive pleadings). Accordingly, we remand this case to the district court to allow Tsiotis to file an answer to the United States' third-party complaint against it. The district court may allow further discovery and hear further evidence if it deems it necessary to decide whether Tsiotis' release bars the United States' claim. The district court should then enter a ruling on whether Tsiotis is liable to the United States in contribution under the dangerous instrumentality doctrine.

## III. CONCLUSION

In sum, we affirm the district court's damages awards to Hiatt of $100,000 for her noneconomic loss, $361,325 for her loss of support, and $419,456 for the estate's loss of net accumulations. We reverse the district court's decision that the amount for which third-party defendant Anderson is liable to the United States in contribution should be reduced by $100,000. We hold that the $100,000 reduction, representing the amount paid in settlement to Mrs. Hiatt, should be deducted from the amount that the United States as primary defendant owes to Mrs. Hiatt.

We reverse the district court's decision that no damages were awardable to the decedent's son, John Hiatt.

We affirm the district court's decision that the Florida Wrongful Death Act does not permit recovery for an estate's premature payment of estate taxes.

Regarding the United States' third-party complaint against George Tsiotis, we reverse the district court's ruling that Tsiotis is not liable to the United States for contribution.

Accordingly, this case is remanded to the district court. On remand, the district court is to (1) determine the extent of John Hiatt's noneconomic loss and enter an award accordingly; (2) proceed with the United States' third-party complaint against Tsiotis under the dangerous instrumentality doctrine; and (3) after Mrs. Hiatt's award is augmented to the extent

of John Hiatt's recovery, if any, to reduce Mrs. Hiatt's total award by $100,000, representing the amount she received in settlement before trial.