Lauriat, Peter M., J.
This is an action against insurance advisors and attorneys arising out of their alleged failure to properly draft insurance trusts and related documents. In a decision dated January 21, 2010, this court (Hinkle, J.) dismissed the plaintiffs’ common-law claims on statute of limitations grounds. See Memoran-dumofDecisionandOrderon(i)JohnJ. FarreUy’s Motions for Summary Judgment, (ii) Plaintiffs’ Cross-Motion for *514 Partial Summary Judgment and (iii) Defendant Nationwide Life Insurance Company of America’s Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment (Hinkle, J.) (January 21, 2010) (the “January 21, 2010 Decision”). Now before the court is defendant Howard P. Gerrin’s motion for summary judgment on the plaintiffs’ sole remaining claim for violation of G.L.c. 93A, in which defendants Mark Shub, George J. Leontire, John and Donna Farrelly and Nationwide Life Insurance Company of America (collectively, the “defendants”) join. For the following reasons, the summary judgment motion is allowed.
BACKGROUND
The court need not recite the full factual background to this action, which is set forth in the January 21, 2010 Decision. For the purposes of this motion, defendants Lon Sherman (“Lon”) and Marc Sherman (“Marc”) (collectively, the “Shermans”) purchased two life insurance policies, which were to become assets of two irrevocable life insurance trusts, the beneficiaries of which are various family members. The Lon Sherman Irrevocable Life Insurance Trust (the “Lon Sherman Trust”) was executed on September 10, 1992, and the Marc Sherman Irrevocable Life Insurance Trust (the “Marc Sherman Trust”) was executed on October 1,1992. The trusts are identical in all material respects, as is the insurance coverage purchased for the trusts.
In 2004, as part of a review of their estate planning, the Shermans claim that they discovered defects in the trust instruments and related documents that could result in increased estate tax and gift tax liability in the future. They filed this action on June 14, 2007. The defendants now contend that, because the Sher-mans are alive, any damages that the plaintiffs may suffer upon the Shermans’ deaths are too speculative to be actionable. The plaintiffs take the position that their damages can be ascertained with reasonable certainly based on reasonable assumptions.
DISCUSSION
Summary judgment will be granted where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). “The moving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000).
The thrust of the defendants’ argument is that, regardless of any asserted theory of liability, estate and gift taxes are subject to calculation only at the time of Lon’s and Marc’s deaths, a calculation that, of necessity, would be subject to a host of variables. These include, inter alia, the value of the decedent’s estate; the nature and amount of any deductions, credits and exemptions that may be available in each estate; the state or jurisdiction in which each asset is located; the applicable federal and state estate tax laws in force at that time; the decedent’s marital status; and the identity of the beneficiaries of each estate. Because these future variables are currently unknown and unknowable, the defendants claim that any damages are purely speculative and thus cannot support a claim under c. 93A.
The plaintiffs counter with an expert, who opines that “damages may be reasonably calculated by estimating the additional estate taxes for which the parties can be held liable on account of additional, but initially avoidable, cumulative gifts made by them on account of the deficiencies.” His calculations are based on current assets and tax rates based on current tax laws. He assumes that the Shermans’ estates would be subject to the highest tax rate, 45%, and that the children would be in the 50% estate tax bracket, under the assumption that they will be wealthy in their own right. He also assumes that there would be no reduction in the value of the estates,[1] no change in the settlors’ investment strategy, no change in their place of residence or marital status, and no change in the beneficiaries of the estates.[2] The plaintiffs contend that the above assumptions are reasonable, and similar to those Massachusetts courts have made with respect to the calculation of lost profits in business torts and the value of a person’s life in wrongful death and personal injury cases.
The plaintiffs’ argument falls well short of the mark. It is undisputed that damages are an essential element of a cause of action under G.L.c. 93A. Weeks v. Harbor Nat’l Bank, 388 Mass. 141, 144 n. 2 (1983). Although the plaintiffs correctly point out that they are not required to prove damages with mathematical certainty, there is no recovery unless the “harm had a reasonably ascertainable monetary value.” Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 488 (1994) (internal quotations and citations omitted). “[SJuch damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty.” Lowrie v. Castle, 225 Mass. 37, 51 (1916). It is not uncertainty as to the amount of damages that precludes recovery, but rather the uncertainty as to the existence of damages.[3]
Here, even assuming that there are no changes in the Shermans’ personal circumstances and the size of their estates at the time of their future deaths,[4] the court can make no such assumptions with respect to the federal and state tax statutes that may then be in effect. For example, there is currently no federal estate tax. And while the plaintiffs’ claim that “it would be folly to assume this will remain the state of affairs for very much longer,” the court is not in a position to divine the future intent and/or actions of Congress or to make such a prognostication.
While there is no Massachusetts case directly on point, the court finds support for its conclusion in cases from other jurisdictions. In Kemke v. The Mertninger Clinic, Inc., the United States District Court for the District of Kansas, applying Kansas law, held that the *515 plaintiffs could not recover for any future estate tax liability, where such liability would be dependent not only on the decedent’s tax status and assets, but also on “the tax law itself.” Kernke v. The Menninger Clinic, Inc., 172 F.Sup.2d 1347, 1355 (D.Kan. 2001). Similarly, the Eleventh Circuit denied recovery as too speculative because “it is impossible to foresee what estate tax liability may be imposed under whatever tax laws may be in effect in the year” that the decedent would have died, but for the defendant’s tortious conduct. Hiatt v. United States of America, 910 F.2d 737, 745 (11th Cir. 1990).
In Farrar v. Brooklyn Union Gas Co., the Court of Appeals of New York held that “future tax liability is not considered when determining pecuniary loss ... In this case, the administrator seeks recovery not of an earned, fixed tax credit, but of an inchoate one which decedent may have earned in futuro assuming at least these key factors remained the same—the amount and assets of the estate, the decedent’s tax status, and the tax law itself. These are uncertain, dependent on future changeable events and, thus, inherently speculative. Such a loss is not compensable.” Farrar v. Brooklyn Union Gas Co., 537 N.Y.S.2d 26, 26-27 (1988). Similarly, the Court of Appeals of Ohio held that prospective adverse tax consequences were too speculative and not compensable where any tax liability depended on the amount of the estate at the time of death and the tax laws in effect at that time. Pietz v. Toledo Trust Co., 63 Ohio App.3d 17, 23 (1989). See also Martin D. Begleiter, First Let’s Sue All the Lawyers—What Will We Get Damages for Estate Planning Malpractice, 51 Hastings L.J. 325, 347-48 (January 2000).
Accordingly, the court concludes that any damages to the plaintiffs as a result of the defendants’ alleged wrongdoing rest on unknown (and, at least now, unknowable) factors, and thus are too uncertain and conjectural to grant relief. See, e.g., Lowrie, 225 Mass. at 55; Pierce v. Clark, 66 Mass.App.Ct. 912, 915 (2006). Otherwise put, “(t]he standard of reasonable approximation has its limits; it cannot descend into speculation.” Renovator’s Supply, Inc. v. Sovereign Bank, 72 Mass.App.Ct. 419, 436 (2008).
ORDER
For the foregoing reasons, Defendant Howard P. Gerrin’s Motion for Summary Judgment, in which Defendants Mark Shub, George J. Leontire, John and Donna Farrelly and Nationwide Life Insurance Company of America join, is ALLOWED.

The Shermans are cardiologists capable of earning significant sums, and each has had a net worth of at least $6,000,000 for the past ten years.

Neither Lon nor Marc has provided for charitable gifts; the recipients of the estates are their respective spouses and children.

The plaintiffs’ reliance on business torts and wrongful death or personal injury cases is inapposite. The calculation of prospective profits in business torts is grounded on an already established earnings record. See, e.g., Rambola v. Cosindas, 351 Mass. 382, 385 (1966). See also Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 414 (2003); Harte Toyota, Inc. v. Compass Bank for Savs., 67 Mass.App.Ct. 1117 at *7 (2006) (unpublished opinion) (damages calculated by comparing pre-breach income with post-breach income). As for lost earning capacity in personal injury or wrongful death cases, the calculation of damages rests in large measure on the claimant’s or decedent’s past and projected income. See, e.g., Renzi v. Paredes, 352 Mass. 38, 53 and n. 9 (2008).

The Shermans are both in their sixties, presumably in good health and earning a good income. They are reportedly happily married, with no intention of changing their respective residences. Although not relevant to the present analysis, life is seldom, if ever, predictable. As John Lennon once noted, “Life is what happens to you while you’re busy making other plans.”