TEAM SYSTEMS INTERNATIONAL
LLC, Plaintiff-Counter Defendant-
Appellant-Cross Appellee,

v.

AQUATE CORPORATION, Defendant-
Counter Claimant-Appellee-Cross
Appellant.

No. 16-11476
Non-Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

(March 17, 2017)

Chip G. Schoneberger, Foster Graham Milstein & Calisher, LLP, Denver, CO, Calvin Carter Clay, Christopher Andrew McNutt, Joshua J. Wright, Hollis Wright Clay & Vail, PC, Birmingham, AL, Jerome S. Gabig, Wilmer & Lee, PA, Athens, AL, S. Dagnal Rowe, Wilmer & Lee, PA, Huntsville, AL, for Plaintiff-Appellant-Cross Appellee

Charles A. Ray, IV, J. R. Brooks, Terry R. Bynum, II, J. Dale Gipson, Christopher M. Pape, Michael W. Rich, Lanier Ford Shaver & Payne, PC, Huntsville, AL, Eugene K. Bertman, Talley Turner & Bertman, Norman, OK, for Defendant-Appellee-Cross Appellant

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal requires us to review certain aspects of the district court's damages award following a bench trial in Plaintiff's breach-of-contract action. After careful review, we conclude that the district court's findings of fact and conclusions of law respecting damages were thorough and well-reasoned, and we AFFIRM each contested portion of the final order.

## BACKGROUND [1]

The underlying breach-of-contract action arose from a subcontract agreement between plaintiff Team Systems International, LLC, and defendant AQuate Corporation. The parties were successful bidders on a joint proposal to provide security services onboard a maritime radar station under the supervision of the Military Sealift Command, a division of the United States Navy. Under the terms of the winning bid, Defendant would serve as the prime contractor on the project and would assist Plaintiff in acquiring "Secret"-level facility security clearance ("FCL"), which the Government required both parties to hold before undertaking the project. In turn, Plaintiff would supply the personnel needed to perform security services under the prime contract. After winning the bid, the parties entered into a subcontract agreement (the "Subcontract") detailing this division of responsibilities. The Subcontract obligated Defendant—as a matter of contract as well as regulatory law—to sponsor Plaintiff in applying for the required FCL, and to do so early enough to

allow clearance to be granted before work under the prime contract was to begin.

Defendant made a perfunctory effort to begin the FCL application on Plaintiff's behalf, but the parties' relationship began to sour shortly after the Subcontract was signed. A series of strategic errors and intentional miscommunications by Defendant brought the FCL approval process to a halt until just days before performance of the prime contract was intended to begin. Defendant maintained that Plaintiff's failure to obtain a FCL constituted a default under the Subcontract and exercised its right to terminate the agreement. Plaintiff responded by filing suit against Defendant in the Eastern District of Virginia, alleging (among other things) that Defendant had breached the Subcontract by actively preventing it from obtaining the required FCL and by improperly terminating the Subcontract on that basis.

In spite of Defendant's efforts to stymie the approval process, the Government finally granted Plaintiff both an *interim* FCL and a *final* FCL on the day performance of the prime contract was scheduled to begin. Plaintiff received notice of the interim FCL that same day; delivery of the final FCL arrived three days later. No performance under the prime contract had begun at that point in time. With this clearance in hand, Plaintiff was fully authorized to perform under the Subcontract as the parties had originally planned. Nonetheless, Plaintiff did not ask Defendant to reinstate it on the Subcontract—in fact, Plaintiff presented no credible evidence at trial that it ever directly notified Defendant of the final FCL after its delivery.[2] As the district court found, Defen-

---

1. We derive the pertinent facts from the district court's findings of fact following bench trial in the proceeding below. None of these factual findings is challenged on appeal.

2. At trial, Deborah Mott—Plaintiff's CEO—testified that she informed Defendant of the final FCL in a phone call immediately after it was delivered. Considering the timing and circumstances of this testimony, the district

dant was not aware that the final FCL had been granted until it was disclosed through discovery several months later. Thus, instead of attempting to resurrect the Subcontract and resume its work on the military contract once it received its final clearance, Plaintiff focused its efforts on its lawsuit—which hinged on its contention that Defendant had precluded it from obtaining clearance in time for it to perform.

Approximately one month later, Plaintiff voluntarily dismissed its Virginia suit and re-filed in the Northern District of Alabama. Plaintiff asserted the same breach-of-contract claims and represented that the allegations in its complaint had been verified by Deborah Mott, Plaintiff's CEO. Importantly, the complaint stated in unambiguous terms that Plaintiff had received an interim FCL—but it entirely failed to mention that Plaintiff also received its *final* FCL shortly thereafter. Elsewhere in the complaint, Plaintiff stated that Defendant "has actively prevented [Plaintiff] from obtaining an FCL through unreasonable delay." This statement—while truthful at the time the Virginia suit was filed—was no longer correct when Plaintiff initiated the Alabama suit. The same misleading representations pervaded Plaintiff's filings in support of its motion for a preliminary injunction. As the district court summarized: *"twenty-eight days after ... [Plaintiff] had been issued both an interim and a final FCL,"* Plaintiff's Alabama filings *"repeatedly* represented to this court and opposing counsel that the company had not only failed to receive a final FCL, but also that the [Government] indicated that it might suspend a full investigation into [Plaintiff's] suitability for a

final FCL." (Emphases in original.) Neither representation was accurate.

Plaintiff did not correct these inaccuracies until sixteen months into the Alabama proceeding, after the parties had progressed through a substantial portion of discovery. And Plaintiff did not outwardly acknowledge to the district court that it had received a final FCL for another five months, when it made passing reference to the FCL in a brief supporting a motion for summary judgment.

Following a bench trial, the district court found that Defendant breached the Subcontract by failing to sponsor Plaintiff for a final FCL in a timely manner and by terminating the Subcontract on those grounds. In accordance with this assignment of liability, the district court granted Plaintiff expectation damages equal to the revenue the Subcontract was intended to yield, less Plaintiff's costs of performance, for the initial year of the project.[3] The baseline damages award totaled $575,132.66.

However, after significant and thorough discussion, the district court concluded that this baseline damages award should be "scaled to reflect [Plaintiff's] failure to mitigate" its damages under the Subcontract by promptly disclosing its receipt of the final FCL. In its final analysis, the court determined that Plaintiff was entitled to compensation only for the period from February 1, 2013 (the date on which performance was due to begin) to March 1, 2013 (the day on which Plaintiff filed its first set of misleading pleadings before the district court). The court ultimately awarded Plaintiff $68,928.14 in damages, representing the expected net value of the one-

---

court did "not find [the] testimony credible." Plaintiff does not challenge this finding.

**3.** The duration of the prime contract was one year. The military did, in fact, renew the

contract for three additional years, but the district court did not include the renewal years in its baseline damages calculation.

year Subcontract for the twenty-nine days for which Plaintiff was entitled to recover.

On appeal, Plaintiff seeks review of the district court's decision to limit damages for Plaintiff's failure to mitigate. Defendant cross-appeals, challenging several aspects of the district court's baseline damages calculation. Neither party argues that the district court erred in finding Defendant liable on two of Plaintiff's three substantive claims; our review focuses solely on the court's damages analysis.

## STANDARDS OF REVIEW

Damages calculations are factual determinations committed to the sound discretion of the factfinder. *See, e.g., Bravo v. United States*, 532 F.3d 1154, 1170 (11th Cir. 2008) (Wilson, J., concurring in part and dissenting in part). Where, as here, the district court has acted as factfinder, we review its award of damages and any pertinent factual findings for clear error. *Simmons v. Conger*, 86 F.3d 1080, 1084 (11th Cir. 1996). *See also Treibacher Industrie, A.G. v. Allegheny Techs., Inc.*, 464 F.3d 1235, 1237 (11th Cir. 2006) (noting that district court's assessment of mitigation of damages was factual question subject to clear-error review); *Avco Fin. Servs., Inc. v. Ramsey*, 631 So.2d 940, 942 (Ala. 1994) (establishing that the question whether a plaintiff has sufficiently mitigated damages is a question of fact). In examining a court's award of damages, we "afford considerable deference to the district court." *Hiatt v. United States*, 910 F.2d 737, 742 (11th Cir. 1990). As such, this Court will not reverse an award "simply because it may conclude that it would have computed damages differently." *Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 923 (11th Cir. 2001).

By contrast, we review the court's legal conclusions *de novo. Sea Byte, Inc. v. Hud-*

*son Marine Mgmt. Svcs., Inc.*, 565 F.3d 1293, 1300 (11th Cir. 2009).

## DISCUSSION

### I. Limitation of Damages for Failure to Mitigate

Plaintiff's sole argument on appeal is that the district court erred in reducing its award by finding that Plaintiff failed to mitigate its damages. We do not find that the district court erred as a matter of law or in its factual determinations.

The Subcontract is governed by Alabama law. Alabama courts recognize "the long-standing rule that the law imposes upon all parties who seek recompense from another a duty to mitigate their losses or damages." *Avco*, 631 So.2d at 942. Under this rule, "a plaintiff can recover only for that damage or loss that would have been sustained if the plaintiff had exercised such care as a reasonably prudent person would have exercised under like circumstances to mitigate the damage or loss." *Id.* The reasonableness of the plaintiff's efforts to mitigate damages is a question of fact. *Id.*

Defendant in this case asserted as an affirmative defense that Plaintiff failed to mitigate its damages by failing to notify Defendant of its final FCL and to explore the possibility of resuming work under the Subcontract. Upon close examination of the evidence presented at trial, the district court agreed. It found that, if Plaintiff "had promptly disclosed that its final FCL had been awarded, this long-running litigation might have been avoided, [the parties] could have restored their contractual relationship with a minimum of loss, and both parties could have avoided what now must amount to substantial litigation costs and attorneys' fees." Moreover, "[d]isclosure of the award of [Plaintiff's] final FCL would not have forced [Plaintiff] to sacrifice any

substantive right, or forego any advantageous opportunity. To the contrary, [Plaintiff] would have regained the opportunity profit from the contract it had negotiated." Similarly, "[d]isclosing its final FCL also would not have exposed [Plaintiff] to any undue risk or humiliation, or caused it to incur undue expense"; in fact, timely disclosure might "have led to the restoration of [Plaintiff's] reputation in the contracting community, and expanded its ability to participate in lucrative government contracting opportunities in the future."

The court acknowledged that, even if news of the final FCL had been disclosed, Defendant's animus toward Plaintiff might still have led it to refuse a request by Plaintiff to resume work on the project. But the possibility that such disclosure might have been futile in restoring the parties' relationship did not release Plaintiff of its duty to make costless efforts toward that end. Ultimately, the court concluded that Plaintiff's persistent failure to notify the parties and the court of the final FCL—its possession of which lay at the heart of its substantive claims—was unreasonable under the circumstances. *See Avco,* 631 So.2d at 942–43 (describing reasonableness standard for analysis of failure to mitigate). We find no error in the district court's conclusion that Plaintiff failed to make reasonable efforts mitigate damages, nor do we find error in its decision to limit damages accordingly.

Plaintiff's arguments to the contrary are deeply flawed. Plaintiff first asserts that, although the district court "cloaked its damages reduction in terms of 'mitigation[,]' ... the language and rationale of its judgment make clear" that the court was, in actuality, exercising "its inherent power to sanction [Plaintiff] for perceived misconduct in failing to formally correct" the misleading statements in its pleadings. It is true that the district court justified its reduction of damages, in part, by observing that Plaintiff violated its duty of candor to the court when it repeatedly misled the court into believing it did not possess a final FCL. This apt observation in no way undercuts the court's standalone conclusion that Plaintiff's non-disclosure amounted to a failure to mitigate its damages in a reasonable manner. The court's damages reduction reflected this latter conclusion and was not, as Plaintiff urges, an improper sanction concealed by the language of mitigation.

Plaintiff further asks us to find that the court's application of the mitigation doctrine was erroneous as a matter of law because—on Plaintiff's reading of the final judgment—the court found that Defendant "failed to meet its evidentiary burden of proof on causation under a mitigation affirmative defense." The district court did not so find. In fact, the district court rejected Plaintiff's argument to this effect and found that "the record is replete with [ ] proof of [Plaintiff's] failure to mitigate."[4] This conclusion was not clearly erroneous, nor did the court err as a matter of law in applying the mitigation doctrine to the facts of this case.

For these reasons, we AFFIRM the district court's reduction of Plaintiff's award in light of its finding that Plaintiff failed to mitigate its damages—a finding which was amply supported by the factual record.

---

4. Plaintiff argued before the district court that Defendant failed to satisfy its burden of proving that Plaintiff failed to mitigate "because it did not offer any testimony that, if [Defendant] had received notice of [Plaintiff's] final FCL at an earlier date, it definitely would have reinstated [Plaintiff] to the Subcontract." The court was "not persuaded," as the argument "confuses [Defendant's] duty to *prove* mitigation with [Plaintiff's] duty *to mitigate.*"

## II. Calculation of Expectancy Damages

In its cross-appeal, Defendant asks us to reject several aspects of the district court's damages calculation. We find no merit to Defendant's arguments.

### A. Cost of DBA Insurance

■ Defendant argued before the district court that Plaintiff was obligated under the Subcontract to provide insurance coverage under the Defense Base Act ("DBA") and that the cost of this insurance should be deducted from Plaintiff's expected revenues. The district court agreed but was unable to calculate the deduction because Defendant "failed to introduce any evidence of the cost of such premiums." Defendant argues that this finding improperly shifted the burden of proving Plaintiff's expected profits to Defendant, because Alabama law assigns that burden to the party seeking relief.

This argument is misguided. In concluding that Plaintiff was entitled to expectancy damages, the district court implicitly found that Plaintiff produced sufficient evidence to meet its burden of proving the revenue and costs associated with performance, based on Plaintiff's own interpretation of the Subcontract's terms. *See Intergraph Corp. v. Bentley Sys. Inc.*, 58 So.3d 63, 78 (Ala. 2010) ("[I]n a lost-profits action the plaintiff has the burden of alleging and proving not only (a) what he would have received from the performance so prevented, but also (b) what such performance would have cost him.") (citing *Ex parte Woodward Constr. & Design, Inc.*, 627 So.2d 393, 394 (Ala. 1993)) (internal quotation marks omitted). In defense, Defendant proffered an alternative interpretation of the Subcontract's terms, alleging that Plaintiff's expected costs would have been higher than Plaintiff claimed. To succeed in this argument, Defendant bore the burden of supporting its contrary view of Plaintiff's contractual costs with enough evidence to enable the court to quantify them. The district court did not err in finding that, although Defendant's argument as to Plaintiff's cost structure under the Subcontract was valid as a matter of law, Defendant did not produce sufficient facts to support it. We AFFIRM the district court's exclusion of those costs from the baseline damages calculation.

### B. Other Insurance Costs

■ Defendant also argued before the district court that, under its interpretation of the Subcontract, Plaintiff would have been obligated to carry workers' compensation, general commercial liability, and automobile insurance. The district court reviewed the relevant portions of the Subcontract and prime contract and concluded that, as a matter of law, neither agreement assigned responsibility for these insurance coverages to the subcontractor. Defendant asks us to find on *de novo* review that the district court misinterpreted the relevant contract provisions and that Plaintiff would have been obligated to incur the costs of additional insurance had it performed under the Subcontract.

Upon our independent review of the contractual language, we find no error of law in the district court's conclusions. Section H-5 of the prime contract details the obligations of the prime contractor to carry liability and workers' compensation; it neither states nor implies that the subcontractor is obligated to carry such insurance or reimburse the prime contractor for it. This section is not incorporated by reference into or otherwise modified by the Subcontract.[5] And as the district court

---

**5.** Defendant asks us to find that the Subcon-

tract incorporated § H-5 of the prime con-

found, no section of the Subcontract requires the subcontractor to carry any liability beyond the DBA insurance discussed in the prior section. Defendants' arguments to the contrary are not supported by the plain and unambiguous language of the contracts. We AFFIRM the district court's decision to exclude these alleged insurances costs from the baseline damages calculation.

## C. Additional Alleged Expenses

■ Defendant further urges us to reconsider the district court's determinations regarding three additional elements of Plaintiff's expectancy: (1) Plaintiff's general and administrative expenses ("G&A") relating to the project; (2) a share of profits Plaintiff promised to pay a senior manager for his involvement in the project; and (3) a payment Defendant allegedly paid to Plaintiff under the Subcontract before it was terminated.

First, Defendant argued before the district court that Plaintiff's G&A was a cost of performance and should be deducted from anticipated revenues to fully reflect Plaintiff's expectancy. Without discussion, the district court declined to factor G&A into the baseline damages calculation. Defendant asserts that this omission was an error of law. It is not clear why the district court declined to address G&A in its final judgment, but its determination not to factor these expenses into its expectancy calculation reflected a finding of fact—not a conclusion of law, as Defendant suggests.

Second, Defendant asked the district court to deduct 17.7% of profits from the

project—an amount that Deborah Mott, Plaintiff's CEO, promised to pay one of her senior managers as compensation for his role in the project. Upon review of the facts, the court concluded that this promise was not a cost of performance but rather a means of compensation and should not be included in the damages calculation.

Third, Defendant urged that it had made the first installment payment to Plaintiff under the Subcontract prior to its termination, and argued that expected revenues from the Subcontract should be reduced accordingly. In its role as factfinder, the district court concluded that Defendant "failed to prove at trial, or at any other time, that it made this payment." As a result, the court declined to reduce the damages award by the alleged payment amount.

To reiterate, the district court's determinations as to each of these cost categories were factual findings. Such findings are reserved to the sound judgment of the factfinder. *See Hiatt*, 910 F.2d at 742. We reverse them only "if, after viewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014) (internal quotation marks omitted). We have no such conviction here. As such, we AFFIRM the district court's decisions not to include Plaintiff's prospective G&A, Plaintiff's employee profit-sharing commitment, or Defendant's alleged contractual payment in its damages calculation.

tract by reference and modified its definition of the word "contractor" to place the obligation to carry insurance on Plaintiff rather than Defendant. It is true that, under the Subcontract, "the word 'contractor'" in any clauses of the prime contract that are incorporated into the Subcontract by reference "shall mean 'Subcontractor.'" But none of

the Subcontract's language suggests that § H-5 of the prime contract was incorporated into the Subcontract. Thus, Defendant's argument that we should read the prime contract and Subcontract as shifting the liability for insurance coverage from Defendant, as prime contractor, to Plaintiff, as subcontractor, finds no support in the contracts' language.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** each challenged portion of the district court's damages award.