[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-14067

_____

JEFFREY CROSS,
PAMELA CROSS,

Plaintiffs-Appellees,

*versus*

EQUITYEXPERTS.ORG, LLC,
c/o Jacqueline Galofaro
6632 Telegraph Road, #399
Bloomfield Hills, MI 48301
doing business as Equity Experts,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-03804-AT

_____

Before WILSON, LAGOA, and ED CARNES, Circuit Judges.

PER CURIAM:

After the defendant in this lawsuit was served with the complaint, the deadline to answer it or to file a responsive pleading came and went. The plaintiffs sought a default, and the Clerk entered it. The plaintiffs filed a motion for a default judgment, and a magistrate judge issued an order directing the defendant to respond. The order also directed the defendant to appear at an evidentiary hearing. Disregarding those orders, the defendant neither responded nor appeared.

The magistrate judge conducted the evidentiary hearing, heard testimony from the plaintiffs and considered other evidence they submitted, and issued a report and recommendation. At that point, eight months after it had been served, the defendant finally made an appearance in the case. It filed objections to the report, a belated answer to the complaint, and a motion to set aside default.

The district court later entered a default judgment and awarded damages. Now the defendant contends that it should be allowed to assert an untimely statute of limitations defense, and it

challenges the amount of damages awarded, though not that there were some damages.  Its defensive maneuvers are too little, too late.

I.

Equityexperts.org, LLC (Equity Experts) is a debt collector specializing in the collection of unpaid fees that homeowner associations have assessed against residents.[1]  In its efforts to collect debts for its clients, it uses the mail and makes phone calls, and it often employs counsel to put liens on property and to conduct collection litigation.

Jeffrey and Pamela Cross are homeowners in a subdivision in Cobb County, Georgia.  The homeowners association (HOA) for their subdivision erroneously assessed a fee related to the mailbox at the Cross family home.   The error "spun out of control" and resulted in Equity Experts filing a lien against the Crosses' home on October 30, 2014, and later filing a state court lawsuit against the Crosses.  The Crosses nonetheless continued to pay their HOA fees as they came due.  The spurious lien Equity Experts put on their

---

[1] We take as true the well-pleaded factual allegations of the complaint.  *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) ("[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." (cleaned up)).

house was for $1218.20, which included the erroneous mailbox assessment plus collection fees.[2]

On September 29, 2016, Equity Experts, through counsel, filed a lawsuit against Mr. and Mrs. Cross in Georgia state court in Cobb County, seeking $2802.02, an amount that included more collection fees. While the collection action was pending, employees of Equity Experts repeatedly called the Crosses and attempted to settle a debt in the amount of $2802, even though Mr. Cross told them that he was represented by counsel and that there was litigation pending. Direct calls from Equity Experts to the Crosses continued until September 2017, despite the debt collector's knowledge that the Crosses were represented by counsel.

The Crosses thought the matter might finally be resolved in the state court collection action, but before the end of discovery, Equity Experts voluntarily dismissed that lawsuit. Equity Experts knew when it filed the collection action that there was no "actual evidence" to prove the claims but used litigation to try to coerce the Crosses to settle a debt they did not owe.

On September 28, 2017, Mr. and Mrs. Cross filed a lawsuit against Equity Experts in federal district court in Georgia, alleging violations of the Fair Debt Collection Practices Act (FDCPA) and the Georgia Fair Business Practices Act (GFBPA) along with various state law tort claims. Equity Experts did not file a timely

---

[2] The claim of lien that was filed in Cobb County court was signed by Jordan B. Foreman, Esq., as "authorized representative" for Equity Experts.

answer or any other responsive pleading, and the Crosses sought and received a Clerk's entry of default.

The Crosses then filed a motion for default judgment supported by their declarations. On July 3, 2018, a magistrate judge issued an order directing Equity Experts to respond to the Crosses' motion. The order stated that a hearing was required under Federal Rule of Civil Procedure 55(b)(2) "in order to determine whether default judgment should be entered and if so, in what amount." The order directed the Crosses to "be prepared to present sufficient information or evidence to allow the Court to determine: (1) the truth of [the] allegations set forth in their Complaint, including the specific conduct that supports [their] claims; (2) the damages alleged to have been sustained by [them], including the type and amount of damages for which [they sought] a default judgment to be entered; and (3) whether those damages were caused by [Equity Experts'] conduct." The order provided notice of a hearing set for August 23, 2018, and directed the Crosses and Equity Experts to appear.

In response to that order, Equity Experts did not follow the court's directions. It did not respond to the Crosses' motion for default judgment, and it did not appear at the hearing.

The Crosses did appear at the hearing and were represented by their attorney, Kris Skaar. They testified and submitted additional evidence. Mr. Cross testified that they never owed any of the money that Equity Experts was trying to collect through the lien and that the "whole thing" had arisen from a $125 billing error.

Because of the inflated amount of money that Equity Experts claimed the Crosses owed, they were denied use of their neighborhood amenities, including the pool and the tennis courts, even though the Crosses continued to pay the HOA fees, which were approximately $465 per year (totaling $1848 for the four-year period that Equity Experts engaged its debt collection campaign against the Crosses).  They were unable to attend social gatherings with their neighborhood friends at the pool or tennis courts.  They were also denied use of the clubhouse for their crawfish boil fundraisers for juvenile diabetes, an annual event the Crosses traditionally host in honor of their daughter who has Type I diabetes.

Mr. Cross testified that he attempted to refinance the house to pay off a high-interest credit card debt, but he was unable to close on the refinancing in early 2017 because of the lien on the house.  To show damages resulting from that, he  relied on the mathematical calculations in his declaration, which had been submitted to the court before the hearing along with the Crosses' motion for default judgment.  The declaration stated that the Crosses had sought a $40,000 second mortgage on their home, fixed for 20 years with a 4.435% APR, which would have allowed them to pay off a $40,000 credit card debt that had a 12.99% APR.  Over the course of twenty years, that would mean interest payments totaling $72,402.89 instead of $20,398.03 — a difference of $52,004.86.

Both Mr. and Mrs. Cross testified about the frustrations caused by Equity Experts' conduct during the four-year period it attempted to collect a debt they did not owe.  Mrs. Cross testified

19-14067                Opinion of the Court                7

that she was embarrassed when the sheriff came to serve the papers for the state court collection action and the neighbors saw. It was embarrassing when they could not go to the pool while their daughter was at home from college. It was embarrassing that people might know they had a lien on their house. She lost sleep and worried that they might lose the house. Even talking about it at the hearing made her "stomach hurt." The situation caused arguments with her husband because she wanted him to go ahead and pay the claimed debt even though they did not owe it, just to end all of the trouble.

About three months after the evidentiary hearing, the magistrate judge issued a report recommending that the district court grant the Crosses' motion for default judgment on their Fair Debt Collection Practices Act and Georgia Fair Business Practices Act claims and on their state law claims for slander of title and abusive collection.[3] The report determined that filing an invalid lien against the Crosses' home was grounds for a valid FDCPA claim. It noted that an Equity Experts' employee had called Mr. Cross directly to settle the purported debt, while knowing that he was represented by counsel, which clearly violated the FDCPA.[4]

---

[3] The report recommended denying the motion on the Crosses' claims for invasion of privacy and tortious infliction of emotional distress. The district court did deny those claims, and that part of the judgment is not challenged.

[4] The report also found that Equity Experts directed the homeowners' association to deny the Crosses access to the neighborhood amenities in order to coerce them to pay debts they did not owe. In its review of the report, the

8                    Opinion of the Court                    19-14067

The report and recommendation also found that the Crosses had alleged violations of the GFBPA because under Georgia law, allegations of unfair or deceptive debt collection conduct that are sufficient to trigger the FDCPA also plausibly allege violations of the Georgia Act.  The magistrate judge concluded that filing a frivolous state court lawsuit, cutting off access to neighborhood amenities, and repeatedly engaging in direct contact with Mr. Cross while knowing that he was represented by counsel — all to coerce

district court noted that the complaint did not contain any allegations that Equity Experts "directed the HOA" to deny the Crosses access to any neighborhood amenities.  But Mr. Cross had testified at the hearing before the magistrate judge that because of the inflated amount of money that Equity Experts claimed the Crosses owed, they were denied use of the amenities, including the pool and the tennis courts, even though the Crosses continued to pay the HOA fees, which were about $465 per year.

The district court found that even though the Crosses continued to pay the HOA fees, they "suffered reprisal from the HOA for unpaid amounts" and were denied access to the neighborhood amenities.  And it  determined that "the surest explanation for the balance due" coupled with the denial of neighborhood amenities is that "it arose from [Equity Experts'] wrongfully assessed collection costs for its unlawful debt collection activity."  As a result, the court concluded that "the damages for denial [of] HOA amenities flowed from [Equity Experts'] violations of the FDCPA."  We find no error, much less any clear error, in the district court's finding that the Crosses' loss of use of the neighborhood amenities, despite having paid their HOA fees, was an injury that "flowed from" Equity Experts' conduct. *See SunAmerica Corp. v. Sun Life Assur. Co. of Can.*, 77 F.3d 1325, 1337 (11th Cir. 1996) ("As in virtually every other area of the law, we will review [these] factfindings only for clear error.").

19-14067                Opinion of the Court                9

the Crosses into paying — were intentional violations of the Georgia Act.

The report determined that the Crosses had stated a claim for slander of title under Georgia law as a result of the "maliciously recorded . . . lien based on a false amount." And it concluded that they had suffered special damages because they were denied favorable loan terms on a home equity loan after the lender discovered the lien on their property. Finally, the report found that they had stated a claim under Georgia law for the tort of abusive collection, which was based on the same factual allegations.

The report determined damages for the FDCPA, GFBPA, slander of title, and abusive collection claims. It found that Mr. and Mrs. Cross were entitled to $1000 each in statutory damages under the FDCPA, for a total of $2000. It also found that they suffered actual damages stemming from the lost opportunity to qualify for a home equity loan, the cost of defending the collection lawsuit, the loss of use of neighborhood amenities that they had paid for, and mental distress. On the loan denial, the Crosses sought $3628.16, which was the difference in monthly payments between the 4.432% rate they could have gotten in April 2017 and the 12.99% rate they actually paid on the same amount during the 16-month period while the lien was in effect.[5] The report found that they were entitled to that amount of damages stemming from the

---

[5] The Crosses calculated 16 months as the relevant time period, and Equity Experts does not challenge that.

cloud on their title caused by Equity Experts' slander of title and violations of the FDCPA and GFBPA.

On the loss of neighborhood amenities, the report determined that the Crosses were entitled to $1848, based on the HOA fees they paid while they were unable to use the amenities for four years. The report recommended awarding the flat fee of $600 as requested for the attorney's fees for defending the collections lawsuit in state court.

Based on the violations of the FDCPA, the GFBPA, and Equity Experts' tortious conduct, the Crosses had requested $50,000 in general emotional distress damages, but the report recommended awarding $30,000. To determine the appropriate amount of damages, the magistrate judge relied on the Crosses' testimony at the evidentiary hearing about their emotional distress, embarrassment, sleeplessness, and frustration arising from Equity Experts' conduct.

The report recommended granting the Crosses' request to treble their actual damages ($36,076.16) under the GFBPA for a total of $108,228.48 under that statute. It found that Equity Experts' conduct was intentional and recommended an award of punitive damages in the amount of $25,000 for the Crosses' GFBPA, slander of title, and abusive collection claims. Finally, the report recounted the amounts requested for attorney's fees and costs, detailed the reasonableness of the rates requested, and applying the lodestar method, recommended awarding fees in the amount of $11,426 and costs in the amount of $1047.87. To recapitulate, the amounts

were as follows: $2000 statutory damages under FDCPA; $36,076.16 actual damages under GFBPA (trebled to $108,228.48); $25,000 punitive damages; $11,426 attorney's fees; and $1047.87 litigation costs, for a total of $147,702.35.

Equity Experts made its first appearance in the case when it objected to the magistrate judge's carefully detailed report and recommendations. After filing its objections, Equity Experts moved to set aside the default, and the only argument it asserted was that it had not been properly served. It also finally answered the complaint. The Crosses opposed the motion to set aside the default.

The district court determined that it would be premature to review the substance of the magistrate judge's report and recommendations on the Crosses' motion for default judgment while Equity Experts' motion to set aside the default was pending. As a result, the court referred Equity Experts' motion back to the magistrate judge for a decision.

The magistrate judge issued a second report, concluding that Equity Experts had been properly served and recommending that the district court deny Equity Experts' motion to set aside the Clerk's entry of default. The report found that good cause did not justify setting aside the default, and it emphasized the company's failure to follow the court's orders and the fact that it did not appear in the case until it filed objections to the first report and recommendation. Equity Experts offered no excuse for its delay other than its argument that service of process was insufficient, and the magistrate judge had already determined that argument lacked merit.

The magistrate judge found that Equity Experts' delay and its failure to timely engage in the case showed a reckless disregard for the judicial proceedings. And he found that the Crosses would be prejudiced if the court vacated the default because they had expended substantial efforts on briefing and presenting evidence and testimony at the default judgment hearing. They would have to start all over again with their claims eight months after Equity Experts was properly served. Under the circumstances, there was no good cause to set aside the default. The report also directed the clerk to "docket" the judge's earlier report on the Crosses' motion for default judgment.

Equity Experts filed objections to the second report, continuing to argue that service of process was insufficient, and asking the district court to set aside the entry of default. The district court overruled those objections and adopted the second report and recommendation in its entirety. After that, the court reviewed the first report and recommendations on the Crosses' motion for default judgment.

The district court adopted in part that report and recommendation. It noted that Equity Experts had not responded to the underlying motion for default judgment but had filed objections to the report. The court exercised its discretion to decline to consider arguments that were not raised before the magistrate judge, *see Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009), including Equity Experts' belatedly raised affirmative defense that the statute of limitations barred the Crosses' FDCPA and GFBPA claims. The

court determined that the objection was forfeited because it was not raised in a timely responsive pleading and, in effect, double-forfeited because it wasn't raised before the magistrate judge. As a result, it overruled Equity Experts' statute of limitations objections to the FDCPA and GFBPA claims.

As we have noted, *see supra* n.4, the court agreed with Equity Experts that the complaint contained no allegation that Equity Experts had "directed" the HOA to block the Crosses' access to the neighborhood amenities, and it declined to adopt the magistrate judge's report to the extent it found that the claim that the denial of amenities itself violated the FDCPA, the GFBPA, or that it was the basis for a state law claim of abusive debt collection. The district court did find, however, that the Crosses were denied access to the neighborhood amenities even though they had continued to pay the HOA fees, and "the surest explanation" for the ongoing "balance due" along with the denial of amenities was that "it arose from [Equity Experts'] wrongfully assessed collection costs for its unlawful debt collection activity." As a result, the court concluded that "the damages for denial of HOA amenities flowed from [Equity Experts'] violations of the FDCPA." It adopted as modified the magistrate judge's recommendations about the FDCPA claims and fully adopted the report on the GFBPA claim.

The court also adopted the report's recommendations about the slander of title claim, including the measure of damages. And it accepted the report's recommendations about the other damages calculations, including $30,000 for emotional distress. It noted that

14                    Opinion of the Court                    19-14067

the magistrate judge had conducted a hearing at which he considered evidence of the Crosses' emotional distress and had "gauged the credibility" of their testimony. It concluded that the magistrate judge reached the correct result as to the amount of damages.

The court granted judgment in favor of the Crosses on their FDCPA and GFBPA claims and their claims under Georgia law for slander of title and abusive collection. It awarded judgment in the amount of $147,702.35.

II.

Equity Experts first contends that the district court should have considered its statute of limitations defense, which it failed to assert until it filed objections to the magistrate judge's report. A district court has the discretion to decline to consider arguments that were not raised before the magistrate judge. *See Williams*, 557 F.3d at 1292 ("The district court retained the final adjudicative authority and properly exercised its discretion in deciding whether to consider any new arguments raised by [a petitioner] in his objections to the magistrate judge's report and recommendation."). And we review the exercise of that discretion only for abuse of it. *See id.*

The district court did not abuse its discretion by refusing to consider Equity Experts' belatedly raised affirmative defense. That defense was particularly tardy here. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any . . . affirmative defense, including . . . statute of limitations . . . ."); *Day*

*v. Liberty Nat'l Life Ins. Co.*, 122 F.3d 1012, 1015 (11th Cir. 1997) ("The statute of limitations is an affirmative defense which must be specifically pled."); *Am. Nat'l Bank of Jacksonville v. F.D.I.C.*, 710 F.2d 1528, 1537 (11th Cir. 1983) (holding that the defendant "waived its right to advance the statute of limitations defense by its failure to assert this affirmative defense in any pleading filed below in compliance with Fed. R. Civ. P. 8(c)"). Equity Experts did not file a timely answer or responsive pleading after the complaint was served. It did not respond to the Crosses' motion for default judgment, even though the magistrate judge ordered it do so. And it did not appear at the evidentiary hearing on that motion, even though it was given notice and directed to appear.

Only after the magistrate judge issued his report did Equity Experts finally appear in the case by filing objections to it, and at that late stage, it finally asserted a statute of limitations affirmative defense. The district court acted within its discretion in refusing to consider that argument, which could have been, but was not, presented to the magistrate judge before then. As the district court recognized, we said in *Williams* that allowing a party to raise new arguments and present new evidence that it did not present to the magistrate judge "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." 557 F.3d at 1292 (quotation marks omitted). If the district court had allowed the belatedly asserted affirmative defense at that point in the proceedings, it would have

16                    Opinion of the Court                    19-14067

unfairly prejudiced the plaintiffs.  The district court properly exercised its discretion in refusing to consider that defense.

III.

Equity Experts also contends that the amount of damages awarded was too high.  It challenges the award of $30,000 in mental distress damages (trebled to $90,000 under the GFBPA) and the award of $25,000 in punitive damages.[6]  Equity Experts does not argue that those damages should not have been awarded but only that the amount of them should have been lower.

Equity Experts does not dispute that it violated the FDCPA and the GFBPA.  It does not challenge the FDCPA award and does

---

[6] In its initial brief to this Court, Equity Experts focused on the mental distress part of the actual damages award, which was $30,000 trebled to $90,000, and the Crosses responded to that argument in their brief.  The total actual damages amount awarded under the GFBPA was $36,076.16, which included the payments made based on the less favorable interest rate as a result of the lien ($3628.16), loss of access to neighborhood amenities for which HOA fees had been paid ($1848), and attorney's fees for defending the state court collection action ($600), resulting in a total trebled amount of $108,228.48.

In its reply brief, Equity Experts attempted to challenge the entirety of the GFBPA actual damages award, generally contending that the total amount of that award, $36,076.16 trebled to $108,228.48, is excessive. Because it waited until its reply brief to challenge the excessiveness of the other parts of the GFBPA damages award, that argument is forfeited. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014) (holding that arguments raised for the first time in a reply brief are forfeited).  Equity Experts raised no challenge to the awards of $2000 in total statutory damages under the FDCPA, $11,426 in attorney's fees, or $1047.87 in litigation costs.

not dispute that a violation of that Act is also a violation of the Georgia Act. *See Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1303 (11th Cir. 2012) ("The GFBPA, which is to be interpreted and construed consistently with the Federal Trade Commission Act, *see* Ga. Code Ann. § 10–1–391(b), applies to unfair practices in the collection of debts and a violation of the FDCPA constitutes a violation of the GFBPA."). It does not dispute the district court's finding that its violations were intentional. It does not dispute that the GFBPA allows for treble damages for an intentional violation. *See* Ga. Code Ann. § 10-1-399(c).

In short, Equity Experts argues that the Crosses did not suffer all that much and were not particularly vulnerable plaintiffs, that its own conduct was not all that bad, and that, as a result, the amount of emotional distress damages awarded plus punitive damages was excessive, although it doesn't say by how much. It asks us to remand the case for the district court "to award actual and punitive damages more in line with other cases."

We generally review only for clear error a district court's determination about the amount of an award of damages. *See Hiatt v. United States*, 910 F.2d 737, 742 (11th Cir. 1990) ("In reviewing damage awards, we afford considerable deference to the district court; we will reverse the award only if we find it to be clearly erroneous."); *see also Meader By & Through Long v. United States*, 881 F.2d 1056, 1060 (11th Cir. 1989) ("We judge the district court's award of damages by the clearly erroneous standard. We will reverse the court only if, after reviewing all the evidence, we are left

with the definite and firm conviction that a mistake has been committed." (citations and quotation marks omitted)).  Equity Experts contends, however, that an abuse of discretion standard applies here because the district court reviewed *de novo* the magistrate judge's factfindings about damages and adopted those findings in its final judgment.  We need not decide whether that contention is correct because it does not matter.  The district court's determination of the amount of emotional distress and punitive damages was neither clearly erroneous nor an abuse of discretion.

When a default judgment is entered, if all the essential evidence is already in the record, a district court is not required to conduct an evidentiary hearing to determine the amount of damages.  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).  The magistrate judge did conduct a hearing in this case, heard live testimony from Mr. and Mrs. Cross, and considered their evidentiary submissions.  The district court, as it was required to do, reviewed *de novo* the parts of the magistrate judge's report to which Equity Experts had timely objected, including the amount of damages the report recommended awarding.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

The magistrate judge's report determined that the Crosses were entitled to recover general damages for their "mental and

emotional anguish" caused by Equity Experts' violations of the FDCPA and GFBPA and its tortious conduct. The report recounted the Crosses' testimony from the evidentiary hearing "about the severity of their emotional distress, embarrassment, sleeplessness, and frustration due to [Equity Experts'] conduct" and found that "general damages for emotional distress [were] appropriate." The report noted that their "emotional distress [was] not traceable to a single claim," but to avoid duplicative recovery, it recommended awarding the general damages, including emotional distress damages, under the GFBPA. It relied on decisions in which courts had awarded from $7000 to $15,000 in actual damages to individual plaintiffs for FDCPA or GFBPA violations. In the present case there were, of course, two plaintiffs, Mr. and Mrs. Cross. Their damages were then trebled under the GFBPA, as the statute plainly requires under these circumstances. *See* Ga. Code Ann. § 10-1-399(c) (providing that, with certain exceptions not applicable here, "a court shall award three times actual damages for an intentional violation").

After reviewing Equity Experts' objections and the evidence, the district court agreed that the magistrate judge reached the correct result in awarding $30,000 in emotional distress damages to the Crosses. And it also accepted the magistrate judge's recommendation on punitive damages, the award of which was tied to the Crosses' GFBPA, slander of title, and abusive collection

20                    Opinion of the Court                    19-14067

claims and was based on a finding that Equity Experts' conduct was intentional.[7]

A plaintiff who establishes a GFBPA violation may recover actual damages. *See* Ga. Code Ann. § 10-1-399(a), (c); *Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467, 471 (Ga. Ct. App. 1990) ("[T]he measure of damages to be applied for a[] [G]FBPA violation is that of 'actual injury suffered.'"). Under Georgia law, emotional distress is an actual injury resulting in actual damages, and proof of

---

[7] In its initial brief to this Court, Equity Experts made no specific argument about the punitive damages award, complaining only that it was too high. The GFBPA allows for punitive damages when conduct is intentional. *See* Ga. Code Ann. § 10-1-399(a) (providing that "exemplary damages shall be awarded only in cases of intentional violation"); *Colonial Lincoln-Mercury Sales, Inc. v. Molina*, 262 S.E.2d 820, 823–24 (Ga. Ct. App. 1979) (upholding an award of "exemplary" or punitive damages under the GFBPA and explaining that "[t]he intentional violation as contemplated by the [G]FBPA is a volitional act constituting an unfair or deceptive act or practice conjoined with culpable knowledge of the nature (but not necessarily the illegality) of the act."). And as we have mentioned, it is undisputed that Equity Experts' conduct was intentional. As for the alleged excessiveness, the ratio of punitive damages ($25,000) to the total amount of actual damages ($36,076.16) is less than 1:1. And just because a punitive damages award is coupled with a trebled actual damages award under the GFBPA does not mean that the total award is excessive. *See Conseco Fin. Servicing Corp. v. Hill*, 556 S.E.2d 468, 473 (Ga. Ct. App. 2001) ("The [G]FBPA authorizes punitive damages in addition to mandating treble damages for intentional violations."). To the extent that Equity Experts has preserved its challenge to the amount of punitive damages awarded, that challenge fails.

that injury can support an award of actual damages. *See Zieve v. Hairston*, 598 S.E.2d 25, 32 (Ga. Ct. App. 2004); *see also Head v. Ga. Pac. Ry. Co.*, 7 S.E. 217, 218 (Ga. 1887) ("Wounding a man's feelings is as much actual damage as breaking his limbs. The difference is that one is internal and the other external; one mental, the other physical. In either case the damage is not measurable with exactness. There can be a closer approximation in estimating the damage to a limb than to the feelings; but at last the amount is indefinite. The [factfinder] would have a much wider discretion in dealing with feelings than with an external injury.").

Equity Experts waged a long-term collection campaign against the Crosses based on a debt they did not owe, and the Crosses testified that the debt collector's conduct caused them emotional distress, including embarrassment and frustration. *See Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003) ("[A] plaintiff's own testimony of embarrassment and humiliation can be sufficient to support an award for compensatory damages."). They faced multiple coercion tactics and resulting problems: a lien on their home; a state court collection lawsuit; direct collection calls while they were represented by counsel and the state court litigation was pending; loss of neighborhood amenities; and interference with a home equity loan that would have enabled them to pay off a high-interest credit card debt. In awarding the Crosses $30,000 in emotional distress damages, the court accounted for the injuries to both plaintiffs with a single damage award, which is effectively $15,000 per individual plaintiff. Far greater damages awards based

on a single plaintiff's emotional distress have been upheld. *See, e.g.*, *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 744 (11th Cir. 2020) (upholding a $250,000 general award for emotional distress, lost wages, and reputational harm); *see also McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 958 (9th Cir. 2011) (holding that substantial evidence supported the jury's $250,000 emotional distress damage award on FDCPA claims). As the district court emphasized, the magistrate judge held a hearing, considered the Crosses' evidence of emotional distress, and "gauged the credibility" of their testimony. Based on that evidence, the district court determined that a collective award of $30,000 to the Crosses was the correct amount, and those findings are due great deference. *See Owens v. Wainwright*, 698 F.2d 1111, 1113 (11th Cir. 1983) ("Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony.").

Equity Experts has shown no reversible error in any aspect of the district court's damages award.

**AFFIRMED.**[8]

---

[8] This appeal was originally scheduled for oral argument but was removed from the oral argument calendar by unanimous consent of the panel under 11th Cir. R. 34–3(f).